UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WHITE WINSTON SELECT ASSET FUNDS, LLC, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| PROFESSIONAL DIVERSITY NETWORK, INC., | ) | |
| Defendant | ) | |

COMPLAINT

Plaintiff White Winston Select Asset Funds, LLC ("White Winston"), by its attorneys

Gravel & Shea PC and Jeffrey D. Sternklar LLC, brings this action against Defendant

Professional Diversity Network, Inc. ("IPDN"), and alleges as follows:

Nature of the Case

1.      This is an action against IPDN for failure to promptly provide to White Winston

the unrestricted stock certificate it was entitled to under the parties' agreements.  White Winston

provided a line of credit to IPDN in exchange for consideration that included stock warrants

granting White Winston the right to purchase shares of IPDN stock at specified prices.  White

Winston properly exercised its rights under two of these warrants in November 2016 but IPDN

failed to timely comply with its obligations to provide an unrestricted stock certificate for those

shares.  First, IPDN fabricated unnecessary roadblocks for the issuance of the unrestricted stock

certificate.  Second, in a further attempt to restrain White Winston from selling its shares in

IPDN, IPDN wrongfully informed White Winston that its corporate counsel had initiated an

investigation into a recent large investment transaction involving certain members of

management and the board of directors (the "Investigation").  Multiple people at IPDN told White Winston that this was material, non-public information that prevented it from selling any shares of IPDN stock.  IPDN's statement was both unfair and deceptive because, contrary to what IPDN told White Winston, the information was not material and, had White Winston been in possession of the unrestricted stock certificate, White Winston would not have been prevented from selling its shares in the robust February 2017 market.

2.       IPDN caused significant damage to White Winston by preventing it from timely selling its shares of IPDN stock.  IPDN's stock price was $10-13 per share when White Winston should have received an unrestricted certificate in February 2017.  By the time White Winston was able to sell its shares in June 2017, IPDN's stock was selling for less than eight dollars per share, and at volumes that did not support the sale of significant numbers of shares.  IPDN's wrongful refusals to issue an unrestricted certificate for its shares and its unfair and deceptive statements surrounding the Investigation and White Winston's purported inability to trade its shares of IPDN, caused White Winston millions of dollars in losses.  White Winston is seeking compensatory damages and its attorneys' fees.

Jurisdiction and Venue

3.       Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is more than $75,000.  Jurisdiction is also proper in this Court because all parties submitted to this Court's jurisdiction in section 14 of the Common Stock Purchase Warrants executed on June 30, 2016 and the Master Credit Loan Facility executed on March 30, 2016.

4.       Venue is proper in this Court pursuant to the Common Stock Purchase Warrants executed by the parties on June 30, 2016.

Parties

5.      Defendant IPDN is a publicly traded corporation organized and doing business under the laws of the State of Delaware and headquartered in Illinois.

6.      Plaintiff White Winston is a private equity firm located in Boston, Massachusetts. It is organized under Delaware law.

Factual Allegations

IPDN Fails to Issue a Proper Stock Certificate

7.      On March 30, 2016, White Winston and IPDN entered into a loan transaction wherein White Winston provided financing to IPDN and others in exchange for consideration. *See* Master Credit Facility attached hereto as Exhibit 1.

8.      As part of that transaction, White Winston and IPDN executed three separate stock warrant agreements, each entitled Common Stock Purchase Warrant.  The issuance date on these warrants was June 30, 2016.

9.      Pursuant to the warrants, IPDN certified that White Winston was the holder of certain warrants to subscribe for and purchase:  (i) One Million (1,000,000) shares of IPDN's common stock at a purchase price per share of $0.25 (the ".25 Warrants," attached hereto as Exhibit 2); (ii) One Million Seven Hundred Fifty Thousand (1,750,000) shares of IPDN's common stock at a purchase price per share of $0.25 (the "Pro-Rata Warrants," attached hereto as Exhibit 3); and (iii) One Million (1,000,000) shares of IPDN's common stock at a purchase price per share of $2.50 (the "$2.50 Warrants"), as adjusted by the reverse stock split of IPDN's common stock effective September 27, 2016.

10.    On November 7, 2016, White Winston exercised the .25 Warrants and the Pro-Rata Warrants (collectively, "the Warrants"), and IPDN issued to White Winston a total of 343,750 shares of "Registrable Securities" (as that term is defined in the Warrants).

11.    After 97,305 of the shares were sold into IPDN's November 7, 2016 tender offer, the remaining 246,445 shares of "Registrable Securities" were issued to White Winston on November 8, 2016, as evidenced by common stock certificate CS 00031 (the "WW Stock").

12.    The WW Stock, as originally issued on November 8, 2016, was restricted and issued with the following legend (the "Restriction"):

> THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AND HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR IN CONNECTION WITH, THE SALE OR DISTRIBUTION THEREOF. NO SUCH TRANSFER MAY BE EFFECTED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL IN A FORM SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE SECURITIES ACT OF 1933.

13.    The parties contemplated the prompt registration of the WW Stock to allow for the removal of this Restriction to enable White Winston to sell the stock.

14.    In Section 10(b)(1) of the Warrants, IPDN agreed that "[i]f at any time when it is eligible to use a Form S-3 Registration Statement, [White Winston] requests in writing that [IPDN] file a Form S-3 Registration Statement with respect to some or all of the [WW Stock], then [IPDN] shall, as soon as practicable, and in any event within forty-five (45) days after the date such request is made by [White Winston], file a Form S-3 Registration Statement [covering the White Winston Stock]".

15.     On November 23, 2016, White Winston made a demand upon IPDN to file a Form S-3 Registration with the United States Securities and Exchange Commission ("SEC"). IPDN waited 37 days and filed the Form S-3 Registration with the SEC on December 30, 2016.

16.     The Registration Statement became effective on February 13, 2017.

17.     Section 14 of the Warrants provides that the Warrants are governed by the General Corporation Law of the State of Delaware.

18.     Under the General Corporation Law of the State of Delaware, including 8 Del. C. § 158 and 6 Del. C. § 8-401, IPDN had a duty to immediately provide White Winston with a stock certificate without the Restriction on February 13, 2017.

19.     Instead of issuing the unrestricted certificate on February 13, 2017, IPDN embarked on a campaign of unfair and deceptive acts calculated to prevent White Winston from selling its shares in the then-robust market.

20.     First, although neither the Warrants nor the Master Credit Facility required it, IPDN refused to issue a certificate without the Restriction unless and until White Winston provided a written legal opinion to IPDN's transfer agent opining that the removal of the Restriction was proper.

21.     Second, General Counsel for IPDN, Christopher Wesser, demanded that White Winston pay for this legal opinion and made clear that IPDN would not issue a certificate without the Restriction unless White Winston acquiesced to this demand.

22.     The Restriction provides that a legal opinion is not necessary when there is an "effective registration."  For the WW Stocks, the effective registration occurred as of February 13, 2017.

23.     IPDN unfairly imposed the additional condition of a legal opinion as a prerequisite to issuing an unrestricted certificate to White Winston and unfairly insisted that White Winston pay for such an opinion.

24.     On April 6, 2017, nearly two months after the Registration Statement became effective and White Winston should have received its unrestricted certificate, IPDN secured a legal opinion.

25.     Nonetheless, even after obtaining the legal opinion, IPDN further delayed issuing the certificate without Restriction to White Winston until May 19, 2017.

IPDN Represents that White Winston is Prohibited from Selling

26.     IPDN further prevented White Winston from selling IPDN shares by wrongfully informing White Winston of the Investigation and telling White Winston that this was material, non-public information that prevented it from selling any IPDN stock.

27.     On or about February 23, 2017, ten days after IPDN should have issued the certificate without the Restriction to White Winston, IPDN's Chief Executive Officer, Jim Kirsch, informed Todd Enright, a member of White Winston, that Mr. Wesser had initiated an investigation into what he believed was wrongful conduct by certain board members and company officers.

28.     After informing Mr. Enright of the Investigation, Mr. Kirsch informed Mr. Enright that White Winston was now prohibited from selling IPDN shares because it was in possession of non-public material information.

29.     IPDN's investigatory counsel, Andrew DeVooght, Esq., also told Mr. Enright on March 3, 2017, that he was in possession of non-public material information and was therefore barred from selling IPDN stock.

30.     The law firm conducting the Investigation reached out to Mr. Enright on March 2, 2017, to schedule an interview, which did not occur until March 30, 2017.

31.     On April 24, 2017, an IPDN board member, Lee Hillman, once again told Mr. Enright that he could not sell IPDN stock due to his possession of non-public material information.

32.     IPDN never disclosed any information about this Investigation in any SEC filing, despite the legal obligation to make disclosures of material information to the SEC on a timely basis.

33.     IPDN never informed White Winston of the results of the purported Investigation. After repeated requests by White Winston for information, one IPDN board member informed White Winston on June 22, 2017 that the Investigation had concluded.

IPDN's Delays Result in Damages to White Winston

34.     On February 13, 2017, the closing price of IPDN's stock was $9.64 per share. The share price increased steadily for the next two weeks and reached a 12-month high of $13.90 on March 1, 2017.

35.     In total, almost 1.7 million shares were sold between February 13 and March 1, 2017.  The weighted average closing price during that period was $11.68 per share.

36.     By June 22, 2017, the date White Winston finally discovered that the Investigation had concluded and that it was free to trade its IPDN shares, the closing price had gone down to $7.70 per share.

37.     The variability in the trading volume reflects a market for IPDN stock that is not highly liquid or robust.  While the high volume of trade in late February 2017 could support the lump sum sale of all 180,616 shares of the WW Stock, since May 15, 2017 the public market has

been such that White Winston has been forced to sell the WW Stock in increments and at steadily declining prices.

38.     White Winston sold the last of the WW Stock on November 17, 2017.  The average sale price for the 180,616 shares of the WW Stock was $4.44.

39.     The following chart shows the dates, number of shares, price per share and amounts realized by White Winston from the sale of its WW Stock once IPDN finally issued a certificate without the Restriction and White Winston learned the Investigation was over.

White Winston Sale of IPDN Shares

| Date traded | Date settled | Activity | # shares | Sale price | Sale proceeds |
|---|---|---|---|---|---|
| | 11/7/16 | Exercise | 343,750 | | |
| | 11/7/16 | Tender | (97,305) | $9.60 | 934,128.00 |
| | 11/8/16 | Receipt | 246,445 | | |
| | 5/5/17[1] | Transfer | (65,829) | | |
| 6/28/17 | 7/3/17 | Sale | (14,404) | $7.81 | 112,435.16 |
| 9/13/17 | 9/15/17 | Sale | (1,907) | $5.01 | 9,551.93 |
| 9/19/17 | 9/21/17 | Sale | (7,606) | $4.76 | 36,213.69 |
| 9/26/17 | 9/28/17 | Sale | (70,000) | $4.13 | 288,750 |
| 10/4/17 | 10/6/17 | Sale | (20,000) | $4.12 | 82,306 |
| 11/17/17 | 11/21/17 | Sale | (66,699) | $4.09 | 273,072.38 |
| | | Total Sales | (180,616) | | $802,329.16 |

40.     White Winston still retains the $2.50 Warrants.

41.     Had White Winston been able to sell all of its shares into the robust February 2017 market, at a maximum share price of $13.90, it would have reaped a gross sales price of $2,510,562, instead of the gross sales proceeds of $802,329.16 it eked out by selling its shares in increments in a diminishing market, a loss of $1,708,233.

---

[1] These shares were transferred to a limited partner of White Winston.

COUNT I
Breach of Contract

42.     Plaintiff realleges the above paragraphs as though fully set forth herein.

43.     The Warrants and the Master Credit Facility are valid and enforceable contracts.

44.     White Winston has fully performed or tendered all performance required under these agreements.

45.     IPDN breached its obligations to White Winston as set forth in these agreements by refusing to deliver a certificate without Restriction without unreasonable delay once the Form S-3 became effective on February 13, 2017.

46.     White Winston is entitled to recover damages for its financial losses because they were the foreseeable result of IPDN's actions in refusing to timely issue the certificate without the Restriction.


COUNT II
Failure to Timely Issue Securities in Violation of
Del. Uniform Commercial Code Section 8-401 and Del. Code Ann. Tit. 8

47.     Plaintiff realleges the above paragraphs as though fully set forth herein.

48.     IPDN was under a statutory duty to register IPDN's stock warrants promptly and to promptly issue a certificate without the Restriction.

49.     IPDN failed to act promptly to provide White Winston with a stock certificate that did not contain the Restriction.

50.     IPDN directly and proximately caused damage to White Winston by breaching this duty including, but not limited to, the loss of opportunity to sell the stock when the price and volume were more favorable to White Winston.

## COUNT III
### Breaches of the Covenant of Good Faith and Fair Dealing

51.     Plaintiff realleges the above paragraphs as though fully set forth herein.

52.     The covenant of good faith and fair dealing is implied in every contract.  It prohibits a party to a contract from engaging in conduct which prevents the other party from receiving the benefits of the bargain.

53.     White Winston had the reasonable expectations that (a) it would receive a marketable certificate for its stock under the terms of the Warrants within a reasonable time after it requested them and (b) it would be able to sell its shares of IPDN as soon as it received a certificate without the Restriction.

54.     By failing to timely provide the unrestricted stock certificate, IPDN breached the covenant of good faith and fair dealing by depriving White Winston of the opportunity to sell the WW Stock at such time as White Winston deemed most profitable, as the parties contemplated in the agreement.

55.     By making unfair and deceptive statements surrounding the Investigation and White Winston's purported inability to trade its shares of IPDN stock because it was now in possession of material, non-public information, IPDN breached the covenant of good faith and fair dealing by depriving White Winston of the opportunity to sell the WW Stock at such time as White Winston deemed most profitable, as the parties contemplated in the agreement.

## COUNT IV
### Violation of M.G.L. ch. 93A § 2, *et seq.*

56.     Plaintiff realleges the above paragraphs as though fully set forth herein.

57.     IPDN was engaged in trade or commerce in Massachusetts for purposes of M.G.L. ch. 93A, § 2, *et seq.*

58.     IPDN engaged in unfair and deceptive business practices by repeatedly attempting to restrain White Winston from selling its shares in IPDN in the robust February 2017 market.

59.     First, IPDN fabricated unnecessary roadblocks for the issuance of the unrestricted stock certificate to White Winston by imposing a non-contractually required condition of a legal opinion as a prerequisite to issuing an unrestricted certificate to White Winston and then unfairly requiring that White Winston pay for such an opinion.

60.     Second, in a further attempt to restrain White Winston from selling its shares in IPDN, IPDN wrongfully informed White Winston of the Investigation and told White Winston that this was material, non-public information that prevented it from selling any shares of IPDN stock, although IPDN never disclosed this allegedly material, non-public information publicly to comply with multiple federal and state securities regulation statutes and regulations.

61.     IPDN's actions constitute unfair or deceptive acts or practices made unlawful by M.G.L. ch. 93A, § 2, *et seq.*

62.     As a result of IPDN's unfair or deceptive acts, White Winston has suffered grievous harm.

COUNT V
Attorneys' Fees

63.     Plaintiff realleges the above paragraphs as though fully set forth herein.

64.     Section 7.8 of the Master Credit Facility requires IPDN to pay White Winston's costs and attorneys' fees associated with the transaction, including costs and attorneys' fees incurred "in connection with the enforcement of or collection of amounts due pursuant to any of the Loan Documents."

65.     The Loan Documents include the Warrants, which are described in Section 1.13 of the Master Credit Facility.

66.     The Warrants state in Section 1 that they are "issued pursuant to a Master Credit Facility, dated as of March 30, 2016."

67.     Section 7.8 further states that White Winston's legal fees "shall be calculated on a time spent basis, based upon the standard hourly rates of such counsel generally charged to clients of that firm on similar matters."

68.     White Winston has filed this suit to enforce its rights under the Master Credit Facility and the Warrants referenced therein.  It seeks full payment of the attorneys' fees it has and will incur to do this.

69.     Moreover, White Winston seeks attorneys' fees under M.G.L. ch. 93A, § 11, which provides that "[i]f the court finds in any action commenced hereunder, that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action."

WHEREFORE, White Winston respectfully requests that this Court enter judgment against IPDN as follows:

A.     That White Winston be awarded general compensatory damages in an amount to be determined at trial;

B.     That, with respect to all damages allowable pursuant to M.G.L. ch. 93A, § 11, for said amount to be doubled or trebled, to the extent the Court finds IPDN's acts or practices constitute willful or knowing violations of M.G.L. ch. 93A, § 2;

C.      That White Winston be awarded its costs and attorneys' fees in an amount to be determined at trial; and

D.      That White Winston be awarded damages for such other and further relief as this Court deems equitable and just.

## JURY DEMAND

**Plaintiff demands trial by jury of all issues so triable.**

Dated:          Burlington, Vermont
                April 26, 2018

                                                /s/ *Navah C. Spero*
                                                Navah C. Spero, Esq.
                                                *pro hac vice application forthcoming*
                                                Erin M. Moore, Esq.
                                                *pro hac vice application forthcoming*
                                                Gravel & Shea PC
                                                76 St. Paul Street, 7th Floor, P.O. Box 369
                                                Burlington, VT  05402-0369
                                                (802) 658-0220
                                                nspero@gravelshea.com
                                                emoore@gravelshea.com

                                                and

                                                /s/ *Jeffrey D. Sternklar*
                                                Jeffrey D. Sternklar (BBO#549561)
                                                JEFFREY D. STERNKLAR LLC
                                                26th Floor
                                                225 Franklin Street
                                                Boston, MA  02110
                                                Telephone:  (617) 396-4515
                                                Facsimile:  (617) 507-6530
                                                E-mail:  jeffrey@sternklarlaw.com

                                                For Plaintiff